NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHELLE BLACK and ERIN WALSH, | Civil Action No.: 11-cv-00709 (CCC) |
| Plaintiffs, | |
| v. | **OPINION** |
| TOWNSHIP OF SOUTH ORANGE et al., | |
| Defendants. | |

**CECCHI, District Judge.**

Currently pending before the Court are two motions for summary judgment, the first filed by Defendants City of Orange and City of Orange Police Department (the "Orange Defendants") on February 19, 2014, (ECF No. 43), and the second filed separately by Defendants Township of South Orange and Township of South Orange Police Department (the "South Orange Defendants") on February 25, 2014, (ECF No. 44). Plaintiffs filed an opposition to Orange's motion (ECF No. 50), but did not respond to the motion of South Orange. The Court decides the motions without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure.[1] For the reasons set forth below, the Court grants both motions for summary judgment.

**I.   BACKGROUND**

This case arises from the death of James Walsh, a pedestrian who was struck and killed by a car fleeing Orange police on February 9, 2009. Orange Police Officer Rennie Officer

---

[1] The Court considers any new arguments not presented by the parties to be waived. See Brenner v. Local 514, United Bhd. of Carpenters & Joiners, 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument.").

Wilson ("Officer Wilson") initiated a pursuit of Frank Bradley ("Bradley") in the City of Orange, after Bradley ran a red light at high speed. Upon Officer Wilson's attempt to pull Bradley over, Bradley fled and continued to drive recklessly. Officer Wilson called into Orange police headquarters to inquire about the vehicle and told the dispatcher that he was approaching South Orange. Officer Wilson continued the pursuit into South Orange without first getting permission from headquarters, as procedure requires. Plaintiffs assert that the Communications Supervisor who was in charge of overseeing the pursuit should have terminated the pursuit prior to Officer Wilson entering South Orange, as procedure allegedly required. A South Orange police officer, who was previously unaware of the pursuit, witnessed Bradley drive into the opposite lane to get around cars stopped at a red light and strike Walsh, who was walking in the crosswalk. Officer Wilson claims that he had lost sight of Bradley and terminated his pursuit several blocks from the accident. The three South Orange officers who were in the area, and who witnessed various parts of the chase, were unaware of any radio transmissions from Orange police until after the accident.

As a result of this incident, decedent James Walsh's widow and the executrix of his estate, Michelle Black, and James Walsh's daughter, Erin Walsh, separately brought suit against the Township of South Orange, the City of Orange, their respective police departments, and unidentified individual officers responsible for the incident. Erin Walsh's action was consolidated with the present action by order of Magistrate Judge Joseph A. Dickson on September 13, 2011. (ECF No. 12). Plaintiffs seek damages for pain and suffering under the New Jersey Survivorship Statute and for pecuniary loss under New Jersey's Wrongful Death Act. Plaintiffs attach liability to Defendants based on (1) the willful and wanton disregard of James Walsh's safety, (2) violations of James Walsh's due process rights under the 14th

Amendment (42 U.S.C. §§ 1983, 1986 claims), and (3) the tortious negligence of the officers involved. In regards to the §§ 1983 and 1986 claims, Plaintiffs claim that Defendants violated James Walsh's due process rights by (1) abusing their power under the color of state law in the manner in which the pursuit was conducted, (2) maintaining a custom, policy, and practice of allowing pursuits in violation of internal rules and procedures, and (3) failing to adequately hire, train, and supervise officers to ensure that pursuit procedures are followed.

## II.  LEGAL STANDARD

Summary judgment is appropriate if the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" demonstrate that there is no genuine issue as to any material fact, and, construing all facts and inferences in a light most favorable to the non-moving party, "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Pollock v. Am. Tel. & Tel. Long Lines, 794 F.2d 860, 864 (3d Cir. 1986).

The moving party has the initial burden of proving the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. Once the moving party meets this burden, the non-moving party has the burden of identifying specific facts to show that, to the contrary, there exists a genuine issue of material fact for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In order to meet its burden, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990) (stating that "[t]he object of [Rule 56(e)] is not to replace conclusory allegations of

3

the complaint . . . with conclusory allegations of an affidavit."); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) (stating that "[t]o raise a genuine issue of material fact," the opponent must "exceed the 'mere scintilla' threshold . . . ."). A fact is "material" if a dispute about that fact "might affect the outcome of the suit under governing [substantive] law," and a "genuine" issue exists as to that fact "if the evidence is such that a reasonable jury could return a verdict for the non[-]moving party." Anderson, 477 U.S. at 248. The Court's role is to determine whether there is a genuine issue for trial, not to weigh the evidence and decide the truth of the matter. Id. at 249.

### III. DISCUSSION

#### A. Federal § 1983 Claims

##### 1. South Orange Defendants

South Orange argues that it cannot be held liable for this incident because it was involved in neither the decision to pursue, nor the pursuit itself. (South Orange ("S.O.") Br. at 12). Further, South Orange asserts that, because of this non-involvement, Plaintiffs cannot establish any custom, policy, or practice on the part of South Orange that caused a violation of the decedent's constitutional rights. (S.O. Br. at 16).

Plaintiffs did not respond to South Orange's motion, but instead filed an opposition pertaining exclusively to Orange's motion. (ECF No. 50). Nonetheless, the Court "must still determine, even for an unopposed summary judgment motion, whether the motion for summary judgment has been properly made and supported and whether granting summary judgment is 'appropriate,' as required by Rule 56(e), Fed. R. Civ. P." Muskett v. Certegy Check Servs., Inc., CIV. 08-3975 JBS/JS, 2010 WL 2710555, at *3 (D.N.J. July 6, 2010). Accordingly, when

plaintiffs bear the burden of proof, as in this case, the Court "must determine that the deficiencies in the opponent's evidence designated in or in connection with the motion entitle the moving party to judgment as a matter of law." Anchorage Assocs. v. Virgin Islands Bd. of Tax Review, 922 F.2d 168, 175 (3d Cir. 1990).  Further, as Plaintiffs have submitted no objection or counter statement to Defendant South Orange's statement of material facts not in dispute, Defendants' statement of material facts is "deemed undisputed for the purposes of this summary judgment motion." Muskett, 2010 WL 2710555, at *3.

The Court has reviewed the record and assessed the merits of Plaintiffs' federal claims against the South Orange Defendants.  The facts of this case demonstrate that, although some South Orange officers witnessed various portions of the chase, South Orange officials were in no way involved with the pursuit prior to the accident.  In fact, a central point of Plaintiffs' argument against Orange is that its officers failed to contact South Orange to get permission for the pursuit.

Upon review, the Court finds no genuine dispute of fact as to South Orange's involvement in this incident and accordingly will grant summary judgment as to the federal claims against the South Orange Defendants.

### 2. Orange Defendants

#### a) Custom, Policy, or Practice

Plaintiffs allege that the City of Orange and the City of Orange Police Department violated the Plaintiffs' substantive due process rights under the Fourteenth Amendment by implementing a practice, policy, or custom of conducting police pursuits in violation of Attorney General policy and internal policy and procedure, thereby giving rise to a § 1983 claim. (Compl. of Michelle Black ¶¶ 22-25; Compl. of Erin Walsh at p. 4-5).  Defendants respond that the facts

5

as produced through discovery cannot sustain a finding of a practice, policy, or custom of disregarding pursuit procedure, particularly because Plaintiffs cannot demonstrate that this incident represents more than one individual officer deviating from procedure. (Orange Br. at 6-8).

The Supreme Court has held that the Civil Rights Act of 1871 allows for municipal liability under § 1983 where the alleged unconstitutional actions are connected to official policy. Monell v. Dept. of Soc. Servs. of the City of New York, 436 U.S. 658, 690 (1978) (holding that governing bodies may be sued under § 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers"). This does not mean that municipalities may be held liable under *respondeat superior*, but only where the governing body "under the color of some official policy, 'causes' an employee to violate another's constitutional rights." Id. at 691-92.

Therefore, in order to sustain a § 1983 claim against a governing body Plaintiffs must prove a causal link between an official policy, practice, or custom and the constitutional violation. See Losch v. Borough of Parkesburg, 736 F.2d 903, 910 (3d Cir. 1984). This burden of proof also requires Plaintiffs to show proximate cause between the municipal practice, policy, or custom and the specific constitutional right being violated. Bielevicz v. Dubinion, 915 F.2d 845, 850 (3d Cir. 1990). While a government policy is established by a "decision maker possessing final authority," a custom arises from a "course of conduct . . . so permanent and well settled as to virtually constitute law." Allen v. Dist. Attorney's Office of Phila., 644 F. Supp. 2d 600, 611 (E.D. Pa. 2009) (quoting Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir.1990)).

Plaintiffs contend that Officer Wilson and the Communications Supervisor's disregard for pursuit procedures in this case is indicative of Orange's custom or practice of ignoring procedure guidelines and rules. (Pls' Br. at 6). Plaintiffs assert that this practice of paying lip-service to internal rules is further evidenced by statements made by Officer Wilson during his deposition. Id. at 7. Officer Wilson stated that he was cognizant of the fact that he was prohibited from continuing the pursuit into South Orange without permission, but made the decision to proceed for fear of losing the fleeing vehicle in the event that the car came up stolen. (Bailey Cert., Ex. C, Officer Wilson Dep. at 44:12-45:3). Further, the Lieutenant of the Orange Police Department, Michael Juliano ("Lieutenant Juliano") stated that some police officers "allow more pursuits, others don't." (Bailey Cert., Ex. B, Juliano Dep. at 22:21-23:3). This is in contrast to the actual Orange police guidelines, which strictly prohibit pursuits outside of the city in the absence of evidence of a particular criminal offense detailed in the policies, with no room for discretion. (Bailey Cert., Ex. D, Orange Police Department Vehicular Pursuit Policy (the "Pursuit Policy"), pg. 9).

Plaintiffs have provided insufficient evidence that a policy, custom, or practice of the City of Orange or the Orange Police Department contributed to the injuries alleged. Plaintiffs appear to argue that, even though an adequate policy existed to guide officers in inter jurisdictional pursuits, there is a "custom" among officers of not strictly adhering to that policy, which they allege should be sufficient to establish municipal liability. Plaintiffs merely put forth the fact that Officer Wilson intentionally disobeyed the pursuit policy on this single occasion as evidence of this "custom". While a single action can establish official policy if the decision to take that particular course of action is properly made by an *authorized decision maker*, Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986), "a single incident of unconstitutional activity

7

[by someone other than an official with policymaking authority] is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy. . . ." Groman v. Twp. of Manalapan, 47 F.3d 628, 637 (D.N.J. 1995) (citing Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985)).

To the extent that Plaintiffs assert liability based on a failure to correct deficiencies in officer pursuits, the Supreme Court has held that "a claim alleging failure to take action could satisfy the policy or custom requirement only where the need to act is so obvious and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need." Gretzula v. Camden County Technical Schools Bd. of Educ., 965 F. Supp. 2d 478, 289 (D.N.J. 2013) (citing City of Canton, Ohio v. Harris, 489 U.S. 378, 390 (1989). The fact that Officer Wilson ignored the guidelines in this particular instance and that Juliano testified that "[s]ome people allow more pursuits, others don't," (Bailey Cert., Ex. B, Juliano Dep. at 22:21-23:3), is insufficient as a matter of law to establish "that there was an obvious pattern of misconduct relating to compliance with its procedures or that the procedures were so inadequate that they indicated that [the Defendants were] deliberately indifferent." Gretzula, 965 F. Supp. 2d at 489. Accordingly, the Court grants summary judgment as to Plaintiffs' claims relating to a policy, practice, or custom of conducting police pursuits in violation of Attorney General policy and internal policy and procedure.

### b) Hiring, Training, and Supervision

Plaintiffs also allege that the Orange defendants violated the decedent's due process rights through deficiencies in the hiring, training, and supervision of police officers. (Compl. of Michelle Black ¶¶ 26-30; Compl. of Erin Walsh at p. 7-8). Defendants respond that the alleged

facts fail to prove any deficiency in hiring, training, or supervision, given the high standard for this type of claim established by federal precedent. (Orange Br. at 9-12).

The Supreme Court has held that municipalities may be liable under § 1983 for deficiencies in hiring, training, and supervision where their hiring, training, and supervision practices are inadequate and their conduct constitutes a "deliberate indifference" to constitutional rights. City of Canton, 489 U.S. at 392; Fagan v. City of Vineland, 22 F.3d 1283, 1291 (3d Cir. 1994). This is a high standard, which requires a plaintiff to show that the alleged deficiency is both the result of a deliberate or conscious choice by policymakers and is closely related to the injury caused. City of Canton, 489 U.S. at 389-90. Further, as noted above, "[i]n order to establish municipal liability, a plaintiff must demonstrate not only that a constitutional violation occurred, but must 'identify a municipal policy or custom' and demonstrate that such policy was the 'moving force' behind the constitutional violation." Godley v. Newark Police Dept., Civ. No. 05-806 (SRC), 2007 WL 269815, at *4 (D.N.J. Jan. 26, 2007) (quoting Bd. of the County Comm'rs v. Brown, 520 U.S. 397, 399 (1997)).

Turning first to hiring, Plaintiffs have produced insufficient evidence of negligent hiring to avoid summary judgment. Plaintiffs allege that the Orange Defendants failed "to exert reasonable care in hiring . . . their police officers involved in this pursuit." (Compl. of Michelle Black, ¶ 28; Compl. of Erin Walsh at p. 7). However, Plaintiffs' brief does not focus on negligent hiring and the record does not support a negligent hiring claim. Further, the Orange Defendants note that:

> N.J.S.A. 52:17B-68 requires that with respect to hiring and training municipalities only appoint permanent police officers if the officer has successfully completed a police training course at an approved school. In this case, Officer Wilson received and successfully completed training at the New Jersey State Police Academy (Officer Wilson Dep. p. 10 Exhibit D).

9

(Orange Br. at 9). Plaintiffs have therefore failed to offer sufficient evidence either of inadequate screening of the particular officers involved in the pursuit or of inadequate policies and procedures with respect to police hiring in general, such that a jury could find "deliberate indifference" on the part of the municipality.

With respect to training, a municipality "is liable under [S]ection 1983 if its policymakers, acting with deliberate indifference, implemented a policy of inadequate training and thereby caused the officers to conduct the pursuit in an unsafe manner and deprive the plaintiffs of life or liberty." Fagan, 22 F.3d at 1292. The Supreme Court has further noted that "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Connick v. Thompson, 131 S.Ct. 1350, 1260 (2011).

In support of their claim that Orange failed to properly train its employees, Plaintiffs note that "[b]etween 2008 and 2009 alone, the Orange Police Department officers were involved in sixty vehicular pursuits resulting in seventeen accidents and injuries to innocent citizens." (Pls' Br. at 10). Plaintiffs assert that the Orange Defendants "paid only lip service to the training of their officers in regard to the vehicular pursuit guidelines." Id. While acknowledging that the guidelines require the police department to provide vehicular pursuit training twice per year, Plaintiffs cite to Lieutenant Juliano's testimony describing the training as "Just go over it real quick, if there's any questions on the guideline itself." (Bailey Cert., Ex. B, Juliano Dep. at 26:5-8). Additionally, Plaintiffs point to Officer Wilson's deposition testimony in which Officer Wilson answered "no" when asked whether he was given specific training related to the pursuit of a motor vehicle prior to the incident. (Bailey Cert., Ex. C, Officer Wilson Dep. at 28:13-22).

Officer Wilson further testified that he does not remember receiving Orange's guidelines when he was hired, and that he learned about pursuit procedures primarily from observing others on the job. Plaintiffs also note that Officer Wilson's pursuit "was controlled by the [C]ommunications [S]upervisor who was required to stop the pursuit before it entered South Orange but failed to do so" as proof that more than just Officer Wilson failed to follow guidelines. (Pls' Br. at 13). Finally, Plaintiffs argue that Orange failed to conduct an objective inquiry after the pursuit and put forth the report of their expert witness, Francis Murphy, who wrote that it was his opinion "that Orange Police Department was grossly deficient in their training of their officers in their restrictive pursuit policies and procedures." (Bailey Cert., Ex. E, Murphy Report at p. 16).

The Court finds that Plaintiffs have failed to offer sufficient evidence of inadequate training to survive summary judgment. As mentioned above, N.J.S.A. 52:17B-68 requires that permanent police officers successfully complete a training course at an approved school prior to being hired. It is undisputed that Officer Wilson completed training at the New Jersey State Police Academy before being hired, which specifically included training in the area of vehicular pursuits. (See Bailey Cert., Ex. C, Officer Wilson Dep. at 11:4-8). Although Plaintiffs' expert opined that the Orange Police Department was deficient in its training, the expert notes that Officer Wilson "not only deviated from his own agencies [sic] departmental policies regarding pursuits but did so intentionally knowing it was a clear violation of his agency's policy." (Bailey Cert., Ex. E, Murphy Report at p. 10). While Officer Wilson did not recall receiving pursuit training from the police department after his time at the academy and prior to the incident, Lieutenant Juliano testified that the policies and procedures were reviewed with officers "twice a year during requalification, at least." (Bailey Cert., Ex. B, Juliano Dep. at 26:1-6). Further,

11

Officer Wilson's testimony makes clear that he had an understanding of the police pursuit policy at the time of the incident, such that he knew he was supposed to receive permission prior to entering into an adjacent town.

Thus, there is no dispute that Officer Wilson was generally aware of the policies in place related to police pursuits. Further, the fact that Orange Police Department officers were involved in sixty vehicular pursuits resulting in seventeen accidents and injuries to innocent citizens is insufficient support for a negligent training claim, as there is no evidence in the record that any of these accidents was the result of a constitutional violation on the part of the officers involved. Plaintiffs have simply put forth this single incident of an officer's knowing and intentional deviation from policy as evidence of inadequate training, which is insufficient to establish deliberate indifference on the part of the Orange Defendants. See, e.g., Jewell v. Ridley, 497 F. App'x 182, 186 (3d Cir. 2012) ("Without a pattern of constitutional violations during police pursuits involving the Ridley police, we cannot conclude that Ridley exhibited deliberate indifference in its efforts to train officers when it provided enough training for its officers to be generally familiar with the pursuit policy."). Plaintiffs have therefore failed to offer sufficient evidence from which a fact finder could conclude that Orange had a policy of inadequate training.

As with their negligent hiring claim, Plaintiffs provide little briefing related to Orange's failure to supervise, but merely assert in their Complaints that Defendants failed "to exercise reasonable care in the . . . supervision of the Police Officers involved in this pursuit." (Compl. of Michelle Black, ¶28; Compl. of Erin Walsh, at p. 7). "A municipality may be held liable for its failure to supervise only if it reflects a policy of deliberate indifference to constitutional rights." Jewell, 497 F. App'x at 186. Further, as with a claim for failure to train, "a single incident of

unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." Tuttle, 471 U.S. 808, 823-24 (1985). For § 1983 purposes, "[m]unicipal policies or customs . . . are such practices of government officials as are so permanent and well-settled as to constitute a custom or usage with the force of law." Palma v. Atl. Cnty., 53 F. Supp. 2d 743, 761-62 (D.N.J. 1999) (citations and quotations omitted). To the extent Plaintiffs continue to assert a failure-to-supervise claim, they do not establish "deliberate indifference" on the part of Orange supervisors, Jewell, 497 F. App'x at 186, and there is insufficient evidence in the record upon which to find a policy of deliberate indifference "so permanent and well-settled as to constitute a custom or usage with the force of law," Palma, 53 F. Supp. 2d at 761-62. Accordingly, Plaintiffs have failed to "provide sufficient proof of a policy or custom [of failure to supervise] to satisfy the dictates of § 1983." Groman, 47 F.3d at 637.

The Court finds that Plaintiffs have failed to demonstrate that the Orange Defendants exhibited deliberate indifference through their allegedly inadequate hiring, training, or supervision.[2]

### B. New Jersey State Law Claims

In addition to the federal claims, Plaintiffs also assert a New Jersey common law tort

---

[2] The Court notes that the Orange Police Department would be granted summary judgment on Plaintiffs' federal claims even if there was sufficient evidence for the Plaintiffs' claims to proceed. "In Section 1983 actions, police departments cannot be sued in conjunction with municipalities because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity." Padilla v. Twp. Of Cherry Hill, 110 F. App'x 272, 278 (3d Cir. 2004). Thus, the claims against the Orange Police Department must be dismissed regardless of the merits of the claims themselves.

13

claim for Defendants' "wanton and willful" misconduct that led to James Walsh's death. (Compl. of Michelle Black, ¶¶ 14-17; Compl. of Erin Walsh at p. 3-4). Having dismissed all of the federal claims against Defendants, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over [related state law claims] if . . . the district court has dismissed all claims over which it has original jurisdiction."); Figueroa v. Buccaneer Hotel, Inc., 188 F.3d 172, 181 (3d Cir. 1999) ("Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction."). Furthermore, "the Court of Appeals for the Third Circuit has held that, where all federal claims are dismissed before trial, 'the district court *must* decline to decide the supplemental state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'" Fitzgerald v. Bellmawr Borough, Civil No. 05-1264 (JBS), 2007 WL 2687456, at 9 (D.N.J. Sept. 6, 2007) (quoting Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000) (citations omitted) (emphasis added)); City of Pittsburgh Com'n on Human Relations v. Key Bank USA, 163 F. App'x 163, 166 (3d Cir. 2006) ("[I]f it appears that all federal claims are subject to dismissal, the court should not exercise jurisdiction over remaining claims unless 'extraordinary circumstances' exist.") (citations omitted)). Finally, "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966).

The Court finds that there are no extraordinary circumstances that weigh in favor of the Court retaining jurisdiction over the state law claims in this case. Although this case has been

pending in this Court, and while the parties have conducted discovery, the Third Circuit has "determined that substantial time devoted to the case and expense incurred by the parties do not constitute extraordinary circumstances." Key Bank USA, 163 F. App'x at 166 (citations and quotations omitted). To the extent that Plaintiffs are concerned about any relevant statute of limitations period, Congress has expressly provided for this foreseeable difficulty:

> The period of limitations for any [state law] claim asserted [pursuant to supplemental jurisdiction] . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

28 U.S.C. § 1367(d); see also Hedges, 204 F.3d at 123.

Most importantly, any regard for the convenience of the parties is outweighed by the fact that Plaintiffs' claims present difficult and novel issues of state law, namely whether the municipal defendants are immune from liability for the actions of Officer Wilson and the Communications Supervisor pursuant to "pursuit liability" codified in N.J.S.A. 59:5-2b(2). Deciding these issues would require a consideration of the complex interplay between various immunity and liability provisions of the New Jersey Tort Claims Act, including N.J.S.A. 59:5-2b(2), N.J.S.A. 59:3-14, and N.J.S.A. 59:3-2. Moreover, whether pursuit immunity extends to the actions of the Communications Supervisor may be an issue of first impression, and deciding this issue would require interpretation of numerous New Jersey legal precedents and policy to determine the bounds of pursuit immunity as established by Tice v. Cramer, 133 N.J. 347 (1993) and Fielder v. Stonack, 141 N.J. 101 (1995).

The Court therefore finds "that the state court is a better forum to provide the 'surer-footed reading of the applicable law' required by Gibbs." Fitzgerald, 2007 WL 2687456, at *10 (quoting Gibbs, 383 U.S. at 726). Thus, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims and dismisses those claims without prejudice such that they may

be refiled in the Superior Court of New Jersey.

## IV. **CONCLUSION**

For the reasons set forth above, the Court grants summary judgment to the City of Orange, the City of Orange Police Department, the Township of South Orange, and the Township of South Orange Police Department as to Plaintiffs' § 1983 Claims, and dismisses the state law claims without prejudice. While the Court is not indifferent to Plaintiffs' loss, the municipalities cannot be held liable in federal court for this unfortunate set of circumstances. An appropriate order follows this opinion.

DATED: September 23, 2014

**CLAIRE C. CECCHI, U.S.D.J.**